### THE JOHN M. NICOL.

### LOVELAND TRANSP. CO. v. CRESCENT TRANSP. CO.

(Circuit Court of Appeals, Sixth Circuit. July 3, 1894.)

#### No. 160.

1. TOWAGE—TAKING LEAKING TOW INTO PORT OF SAFETY.

A propeller, towing a barge on Lake Erie in heavy weather at the request of the barge, which was leaking badly, changed her course to Cleveland,—the nearest port. On arriving at the breakwater, finding no tug to take the barge, as was customary, the propeller signaled for a tug, and stood out into the lake until one came. If she had carried her tow inside, the length and draught of the propeller would have compelled her to keep the narrow channel. Nothing in the contract of towage required her to take the barge to a dock, and there was no apparent peril in waiting for a tug. *Held*, that the propeller was not in fault for failing to tow the barge inside the breakwater on their arrival.

2. SAME.

A tug having come alongside the barge, it was agreed between them that the propeller should tow the barge in, the tug to follow and help as far as necessary or possible, and to take the barge as soon as she was,

towed inside the breakwater. The propeller headed for the entrance, but the barge, after getting substantially in line behind her, took a sudden, heavy sheer towards the east breakwater. The propeller pulled strongly towards the west breakwater, until she was about a boat's length from it, without breaking the sheer of the barge, and then let go the towline to avoid pulling her on the east breakwater. The barge put down her anchor, and the tug made ineffectual efforts to get a line to her, but she drifted across the entrance, and went to pieces on the west breakwater. *Held*, that the propeller was not in fault for casting off the line, in the emergency then existing.

Appeal from the District Court of the United States for the Eastern District of Michigan.

This was a libel against the propeller John M. Nicol for the loss of the barge Wahnapitae while in tow of the propeller. The district court dismissed the libel. Libelant appealed.

The barge Wahnapitae, laden with a cargo of lumber, was taken in tow at Washburn, Wis., a port on Lake Superior, by the propeller John M. Nicol, to be towed to Fairport, Ohio, a port on Lake Erie. After the propeller and her consort reached Lake Erie the wind increased so as to make a heavy sea. The barge, in consequence, sprang a leak, which so increased as to make it dangerous to proceed. The master of the Wahnapitae therefore signaled the steamer to take the barge to a port of safety. At the time this signal was given the vessels were within about 24 miles of Fairport. Cleveland was the nearest port, being about 18 miles S. by W. In obedience to this request the course of the propeller was changed so as to steer direct for Cleveland. The steamer, with her tow, arrived off the port of Cleveland at about 8 p. m. There being no tug either off the port or inside the breakwater, the Nicol blew the usual signal for a tug, and headed around under a port helm, and again stood out in the lake, to wait for a tug. After getting out something over a mile, and having headed out in the lake, the tug Alva B came out from the port, and went alongside the barge, and arranged to aid in taking her inside the harbor. The plan agreed upon between the barge and the tug was that the Nicol should tow the barge in, the tug following and helping as far as necessary or possible, and then to take the barge as soon as she was towed inside the breakwater. This plan was communicated to the master of the Nicol, who, after the tug left him, ported his wheel to come around for the entrance to the harbor. The breakwater in front of the harbor runs nearly east and west. The entrance to the harbor was through an opening in this breakwater 500 feet wide. The direction of the wind was N. N. E., blowing nearly into the entrance between the breakwaters. There was a good deal of sea running in the direction of the wind. Near the breakwater the sea was choppy, made so by the backset of the breakwater. Under a port wheel the Nicol went around, and headed for the entrance.

The contention of the libelant is that the circle made by the Nicol in coming around was too small, and that the barge, being at the end of a 600-foot towline, had a much larger circle to make, and did not get straightened out behind the steamer; that the steamer, regardless of this fact, headed for the entrance, though the barge was not in her wake, and was headed two or more points east of the opening, and directly onto the east breakwater. The libel then alleges that while the barge was slowly coming around after her, with her helm hard a-port, but before she could get into line behind the propeller so as to head for the opening, and when about one-quarter of a mile away from the opening, the propeller cast off the towline and set the barge adrift; that the barge immediately let go her starboard anchor, but this did not fetch her up, as she continued to drag her anchor until she drifted across the opening, and onto the breakwater at a point west of the opening, and was there broken to pieces, one of her crew being drowned while attempting to escape from the sinking vessel.

The faults relied upon here by the libelant are:

(1) That the propeller should have towed the barge in when she first arrived off the port; that she could have done so without difficulty, as both were then heading into the opening of the breakwater.

(2) That the propeller was in fault in hauling said barge around in too small a circle, "and in too close proximity to the breakwater, making it difficult for the barge to follow the propeller."

(3) That the said propeller was at fault in casting off the towline of said barge at the time it was cast off.

(4) That the propeller was at fault in not coming to the assistance and rescue of said barge after the line was cast off, and when it was observed that she was dragging towards the breakwater.

The district court, upon all the evidence, was of opinion that no fault had been proven against the Nicol, and accordingly dismissed the libel, with costs.

Schuyler & Kremer, for appellant.

F. H. Canfield, Geo. L. Canfield, and Harvey D. Goulder, for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge (after stating the facts). 1. We think that the Nicol was not in fault for failing to tow the barge inside the breakwater when the vessels first arrived off the port. The Nicol was not bound for the port of Cleveland, and had no business in that port. Her contract was to tow the barge to Fairport. She had diverged from her course in compliance with the request of the barge, and on account of its unseaworthy condition. The distance from the breakwater to the harbor piers was some 1,200 feet. The deep-water channel was straight in from the entrance to the piers. The water on each side of the channel was shallow, being between 14 and 15 feet on one side, and from 13 to 14 feet on the other side. The Nicol was heavily loaded, and drew between 14 and 15 feet. In view of her length and draught, it is clear that the propeller could not have maneuvered in the basin, and would have been obliged to keep the narrow, deep-water channel, if she had carried her tow inside. There was nothing in the contract of towage which required the Nicol to take her tow to a dock. In ordinary weather the evidence shows that tugs meet vessels going into the harbor from one to three miles outside the breakwater. The master of the Wahnapitae expected to meet with and employ a tug outside, and prepared his harbor line soon after he was headed for Cleveland. He admits his disappointment at finding no tug to take him in. Neither was there any such apparent peril in waiting for a tug as to impose on the Nicol the hazard and the delay of attempting to take her tow inside without the aid of a harbor tug. In rough weather the evidence shows that the custom is for a steamer having a tow to take the tow just inside the breakwater, where it is taken by tugs lying there ready to aid by picking the tow up as soon as the line is cast off. Upon approaching the opening it was seen that there was no tug inside, ready to take the barge. Under the circumstances it was no fault to turn out in the lake to wait for a tug. As we shall hereafter see, the Nicol and her tow were a second time placed in as good position to go in as they had when they first approached the opening, and it is difficult to see how the turning out to wait for a tug was the proximate cause of the subsequent mishap.

2. Upon a careful scrutiny of the evidence we are of opinion that

the weight of the evidence is that the Wahnapitae did get straightened out in the wake of the Nicol when the latter was a second time headed for the entrance, and that after thus getting substantially in line behind the steamer, and headed for the entrance, she took a sudden, heavy sheer, which threw her nearly into a right angle with the direction in which the Nicol was steering.

Upon this point there is a sharp conflict in the testimony. The master and five of the crew of the barge deny that the Wahnapitae had completed the turn, and testify that she never did get into line behind the Nicol after the latter went out into the lake. They deny that she took any sheer after the Nicol was headed the second time for the entrance, and say that the barge was slowly coming around under a port helm, and that if the circle in which the Nicol made the turn had been larger she would have straightened out, and followed the Nicol through the opening. They agree in saying that when the Nicol cast off the towline she was swinging into line, and agree in the opinion that if the Nicol had continued to pull both vessels would have gone safely through the entrance. On the other hand the master and four of the crew of the Nicol unite in saying that the Wahnapitae did make the turn, and did get into line behind the Nicol, and followed, headed for the opening, for several minutes, and that when within about one-fourth of a mile from the opening she took a strong sheer to the port side of the Nicol, and headed directly for the east breakwater. The master and crew of the Nicol are corroborated in this statement of fact by the master and engineer of the tug Alva B, which was following the Wahnapitae a little on the starboard quarter. These witnesses were disinterested, and in good position to know the position of the barge. Further corroboration is found in the evidence of Capt. Dwyer, master of a harbor tug lying inside the harbor in a place where he could see the tow as it approached the harbor, and in the evidence of Russel T. Rumsey, a customs officer, who was in the river custom office, observing the tow through a marine glass, and also in the evidence of Thomas, Shay, one of the life-saving crew, on watch in the tower at the life-saving station. From the position of the side lights on the Nicol and on the Wahnapitae, these witnesses concur, substantially, in saying that the barge did get into the wake of the steamer, and did follow, headed for the opening, until she took a sheer which threw her out of line.

The Wahnapitae was a barge 280 feet in length and 51 feet in beam. She is described as having the bow of a schooner and the stern of a scow. She had but one mast, rigged with a jib sail, which was not in use that night. We are better prepared to credit the testimony as to the sheer by the reason of the well-established character of this barge as a bad steerer in shallow water, and her habit of taking such sheers in a most unaccountable way. Besides this, her steering power was affected by the fact that she was leaking badly, and, at the time of the alleged sheer, had not less than 16 inches of water in her hold.

Under this evidence it is immaterial to consider whether the circle made by the Nicol in coming around was large or small. If the

Wahnapitae had made the swing and had straightened out behind the Nicol, the turn was completed, and the subsequent sheer cannot be attributed to the circle described. When the Wahnapitae took this sheer, the Nicol was headed for the entrance, and within about three boat lengths of the opening. The effect of the sheer was to throw the barge into such a position as to head her directly onto the east breakwater. The obvious thing for the master of the Nicol to do was to break the sheer if he could. He at once gave the signal to work his engines strong, and ported his wheel so as to head upon the west breakwater. After pulling strong for about two minutes, and until the propeller was within about a boat's length of the breakwater, the master of the Nicol—seeing that the sheer was unbroken, and that to continue to pull would inevitably result in pulling the tow onto the east breakwater—sounded one long whistle, as a signal to let the towline go. This was done. The master of the barge put down his anchor, and the tug made several ineffectual efforts to get a line to the barge. All was of no avail. The barge dragged her anchor, and went to pieces against the west breakwater, having drifted with the wind and sea across the entrance. After the towline was cast off, it was not possible for the Nicol to do anything to avoid the catastrophe. The tug was in every way better able to assist, and yet it was unable to do anything.

This sheer, under the circumstances detailed, produced a most dangerous and alarming emergency. It was an emergency without the fault of the Nicol. Three courses were open to her when it occurred:

(1) To put on steam, and endeavor to break the sheer and go through the opening.

(2) To turn out again into the lake.

(3) To hold on to the line, though the sheer was unbroken, and take the consequences.

To turn out again into the lake, after the sheer, seems, on the evidence, to have been almost impossible. The vessels were too close in for the turn, in view of the wind and choppy sea.

To put on steam and break the sheer was apparently the most favorable course. This failed. To pull the Wahnapitae longer, would, on the evidence, have been reckless. She was from two to six points off the port quarter of the Nicol, and headed for about the center of the east breakwater.

The Nicol was already within a boat's length of the end of the west breakwater. To go on was apparent destruction for the tow, to cast off the line gave the barge its only chance. These chances were:

(1) That her anchor might hold.

(2) That she might drift in such a way as to escape contact with the breakwater.

(3) That the very powerful tug right behind her might get a line to her, and pull her out.

It seems to us that under the circumstances the Nicol took a course for which she is not to be condemned. But, if it be admitted that some other course might have resulted better, yet the emergency

was such that we cannot condemn the order given as a fault.　The judgment of the master of the Nicol, after a strenuous effort, was that he could not break the sheer, and that to pull longer was to pull the barge onto the breakwater.　His further judgment was that the emergency required that the line should be cast off.　If this was error,—which, on the weight of the evidence, we do not believe,—it was at least not a fault.　In this judgment the master of the Wahnapitae seemed to concur at the time, for it is clearly shown that on the day following the catastrophe he expressed the opinion that Capt. Stewart was not in fault.

The decree must accordingly be affirmed.